UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTSY LABS, LLC; ZURU INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 21 C 3289 |
| ) | |
| THE INDIVIDUALS, CORPORATIONS, ) | Judge Rebecca R. Pallmeyer |
| LIMITED LIABILITY COMPANIES, ) | |
| PARTNERSHIPS, AND UNINCORPORATED ) | |
| ASSOCIATIONS IDENTIFIED ON ) | |
| SCHEDULE A HERETO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case is one of hundreds filed in this District, in which brand owners sue large groups of online merchants (generically "identified on Schedule A"), alleging theft of intellectual property. In this case, as in most of the other "Schedule A" cases, the court entered a temporary restraining order and asset freeze and, later a preliminary injunction against the defendant merchants. A subset of the defendants named here—amazing5c, dreamhouse2020, happyonlineshop, and salonmarket2020 (hereinafter "Defendants")—have moved to dissolve the preliminary injunction as against them. For the reasons discussed below, the court denies Defendants' motion and denies their alternative request to amend the asset restraint entered against them. The court is, however, willing to reconsider the current asset freeze if Defendants produce more substantial evidence about the profits they made (or did not make) from the infringing products.

## BACKGROUND

Plaintiffs hold a copyright for a range of "fidget cube" toys. (Compl. [1] ¶¶ 1, 11.) They filed this action in June 2021, alleging that a group of foreign individuals and entities—largely based in China—violated that copyright. (*Id.* ¶ 1.) Their complaint alleges that Defendants operate various "Internet Stores," including on platforms like eBay, where they sell counterfeit versions of fidget cube products. (*Id.* ¶ 15.) Those Internet Stores are designed to "appear to be

selling genuine Plaintiff products, while selling inferior imitations of Plaintiffs' products." (*Id.* ¶ 2.) Plaintiffs claim that Defendants use PayPal accounts to move illicitly-generated proceeds to offshore bank accounts. (*Id.* ¶ 23.)

On the same day they filed their complaint, Plaintiffs moved *ex parte* for a temporary restraining order and asset restraint against Defendants [6]. Days later, the court granted that motion, entering the order, drafted by Plaintiffs' counsel, that (1) enjoined the defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit products; (2) temporarily transferred the defendants' domain names to Plaintiffs; (3) temporarily restrained the assets in Defendants' PayPal accounts; (4) provided Plaintiffs with expedited discovery; and (5) permitted service by electronic mail and/or electronic publication [13]. What followed is standard in these cases: the court granted Plaintiffs' motion [15] to convert the TRO to a preliminary injunction [18] and then, on July 30, 2021, granted their motion for entry of a default judgment [32]. Nearly six months later, in January 2022, Defendants moved to vacate the default judgment this court entered against them [68]. After a hearing, the court granted that motion [78]. Defendants now move to dissolve the preliminary injunction against them. (*See* Mot. to Dissolve [83].)

## **LEGAL STANDARD**

The legal standard to impose a preliminary injunction is well established. "To obtain a preliminary injunction, the moving party must make an initial showing that (1) it will suffer irreparable harm in the period before final resolution of its claims; (2) traditional legal remedies are inadequate; and (3) the claim has some likelihood of success on the merits." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If the moving party makes that showing, "the court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to other parties or the public is sufficiently weighty that the injunction should be denied." *Id.* at 324. "The strength of the moving party's likelihood of success on the merits affects the balance of harms." *Planned Parenthood of Ind., Inc. v. Comm'r of the*

*Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). In other words, "[t]he more likely it is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." *Id.* (quotation marks and brackets removed).

Less clear, however, is the standard for dissolving a preliminary injunction. Plaintiffs, citing out-of-circuit precedent, urge that the party seeking to dissolve an injunction must show that "changed circumstances warrant the discontinuation of the order." (Pl.s' Opp. [88] at 2–3 (citing *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 241 (3d Cir. 2003)).) But the Seventh Circuit has not endorsed that framework. To the contrary, in *Centurion Reinsurance Co. v. Singer*, it held that the appellate standards for dissolving an injunction are the same as those for granting or denying one. 810 F.2d 140, 143 (7th Cir. 1987). The court asks whether "the expected cost of dissolving the injunction—considering the probability that dissolution would be erroneous because the plaintiff really is entitled to injunctive relief, and the consequences of such an error—[is] greater or less than the expected cost of not dissolving the injunction." *Id.* "If greater, the injunction should not be dissolved; if less, it should be." *Id.*

Changed circumstances are not, of course, irrelevant. *See, e.g.*, *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019) (a change in circumstances could support a motion for changes in a preliminary injunction); *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 6092636, at *6 (N.D. Ill. Oct. 19, 2016) (citation omitted) (same). But no Seventh Circuit authority implies that changed circumstances are *required* to dissolve an injunction. Such a standard would be particularly burdensome here, where Defendants—who had not yet appeared—had no opportunity to oppose the injunction. The court will consider changed circumstances to the extent they bear on the error-minimizing analysis set forth in *Centurion* and will ultimately make its best equitable judgment. *See Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015) ("We do not doubt . . . that a district judge has discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest."); *qad. Inc. v. ALN Assoc., Inc.*, 974

F.2d 834, 837 (7th Cir. 1992) (district court appropriately exercised discretion in dissolving preliminary injunction based on misrepresentations at injunction hearing).

## DISCUSSION

I.  **Defendants Concede That Plaintiffs Have Shown a Likelihood of Success on the Merits.**

In moving to dissolve the injunction, Defendants do not discuss whether Plaintiffs are likely to succeed on the merits; they have, as Plaintiffs contend, effectively conceded that there is evidence of infringement.[1] (*See* Pl.s' Opp. at 1.) As directed by *Centurion*, this court considers: (1) "the irreparable harm to the plaintiff if the injunction is dissolved, weighted by the probability that dissolution would be a mistake because the plaintiff will go on to win at trial" and (2) "the irreparable harm to the defendant if the injunction is not dissolved, weighted by the probability that allowing the injunction to continue in force would be a mistake because the defendant, not the plaintiff, will win at trial." 810 F.3d at 143.

Because Defendants implicitly conceded that Plaintiffs will win at trial—making the "expected cost of not dissolving the injunction" zero—it follows that the "expected cost of dissolving the injunction" favors Plaintiffs unless they fail to show *any* irreparable harm. *Id.* The court discusses that issue next.

II. **Plaintiffs Have Shown Some Possibility of Irreparable Harm.**

Defendants argue that Plaintiffs cannot show irreparable harm for three reasons: because they delayed seeking relief, because Defendants have stopped selling the infringing goods, and because money damages are adequate to remedy the harm to Plaintiffs. (Mot. to Dissolve at 3–6.)

---

[1] Defendants initially asserted that Plaintiffs' declaration failed to include evidence against defendant amazing5c. (Mot. to Dissolve at 2–3.) But Plaintiffs, in response, identified the evidence—namely, screenshots of amazing5c's eBay offerings. (*See* Pl.s' Opp. at 3 (citing [9-1] at 267–278).) Defendants did not respond to that argument and have conceded the point.

4

In response, Plaintiffs urge that, "[a]t the preliminary injunction stage, the burden on the plaintiff to show irreparable harm from copyright infringement is light." (Pl.s' Opp. at 4 (quoting *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1111 (N.D. Ill. 2005)).) They assert, further, that "[c]opyright claims that show a likelihood of success entitle the holder to a rebuttable presumption of irreparable harm." (*Id.* (quoting *Spinmaster*, 404 F. Supp. 2d at 1111).) In fact, although the Seventh Circuit once recognized a presumption of irreparable harm, the Supreme Court "made clear that there is no such presumption" in *eBay Inc. v. MercExchange L.L.C.*, 537 U.S. 388, 392–93 (2006). *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012).

That said, Plaintiffs need not rely on a presumption here. For purposes of preliminary relief, they have adequately demonstrated irreparable harm by pointing towards potential harm to goodwill, reputation, brand confidence, potential lost market share, and relinquished control of nature and quality of germane products in connection with their copyright. (*See* [19] at 3.) "[I]t is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm." *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citing *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 680 (7th Cir. 2012)). In *Life Spine*, the 7th Circuit upheld a preliminary injunction based on the district court's finding that the plaintiff "had 'some likelihood' of proving irreparable harm stemming from the loss of goodwill and reputation." *Id.* at 546. The court in *Life Spine* explained that while "harm stemming from lost customers or contracts may be quantifiable if the lost customers or contracts are identifiable," the challenge of identifying lost business often transforms lost market share into irreparable harm. *Id.* ("[W]e have held that it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury irreparable") (quotation omitted). Defendants here operated internet stores that sold counterfeit fidget cubes; the customers are unquantifiable and not easily identified. *Life Spine*, then, directly refutes Defendant's argument that Plaintiffs' lost market share is a "purely financial" loss which is "readily compensated." (Mot. to Dissolve at 6.)

Defendants also claim that, because injunctive relief is intended to "protect against future harm, not harm that has already passed," and because Defendants stopped selling the allegedly infringing products as of August 2018, the injunction no longer serves any purpose. If the record supported that position, the court might agree. Here, however, the court cannot credit Defendants' assertion that "Plaintiff has not presented any evidence indicating that Defendants are likely to sell the infringing product in the future" because "Defendants stopped selling the allegedly infringing products by August 2018." (Def.s' Reply [89] at 1.) To the contrary, Plaintiffs cite screenshots showing that Defendants offered infringing products for sale after August 2018. (Pl.s' Opp. at 7 (citing [9] at 277; [9-1] at 327; [9-2] at 337; and [9-4] generally).) True, as Defendants assert, "this evidence only shows that the product listing was listed, not that any products were actually sold after August 2018." (Def.s' Reply at 4.) But the fact that Defendants continue to list infringing products for sale satisfies Plaintiffs' burden of showing a risk of irreparable harm sufficient to warrant injunctive relief, particularly given Defendants' concession on the merits.

Defendants' more compelling argument is that Plaintiffs' delay in bringing this case negates any showing of irreparable harm. "Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). Plaintiffs in this case waited approximately three years to bring their case. (*See* [9-1] (screenshots of potentially infringing products dating between June and December 2018).) The delay weakens Plaintiffs' irreparable harm argument but does not, in the court's view, defeat it. "The Seventh Circuit uses a sliding scale approach in which the more likely it is that a plaintiff will succeed on the merits, then the less the balance of irreparable harms must favor the plaintiff's position." *Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842, 858 (N.D. Ill. 2010) (citing *Ty*, 237 F.3d at 895). That follows from the Seventh Circuit's rationale in *Centurion*. Because Plaintiffs' likelihood of success is near guaranteed, they need only show a minimal likelihood of irreparable harm to

6

warrant continued injunctive relief. In other words, Plaintiffs' delay may reduce what would otherwise be a strong showing of irreparable harm to a weak one, but a weak showing is sufficient.[2] Here, Plaintiffs have made that showing and the court therefore declines to dissolve the injunction.

### III. The Court Declines to Amend the Asset Freeze at This Time, But Is Open to Reviewing Additional Evidence.

In the alternative, Defendants request that if the court declines to lift the injunction, it should at least "limit the asset restraint to the amount that may possibly be recovered as profits through an equitable accounting." (Mot. to Dissolve at 8–9.)

Courts are limited in their ability to restrain assets—rather than behavior—before judgment. *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). District courts "generally do *not* have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Id.* (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund,* 527 U.S. 308, 331 (1999)). One exception to that general rule is where a plaintiff seeks an equitable remedy—like a disgorgement of profits. *Id.* However, "the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Id.* "[I]f the amount of the profits is known, then the asset freeze should apply on[ly] to that specific amount, and no more." *Id.* On the other hand, "[t]o exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting

---

[2] Defendants also briefly assert that the balance of the harms favors Defendants because they stopped selling Plaintiffs' copyrighted products in 2018. (Mot. to Dissolve at 8.) For the same reasons discussed regarding irreparable harm—because Plaintiffs are virtually guaranteed to prevail on the merits and because the court does not accept that Defendants stopped selling infringing goods—the court rejects Defendants' arguments on equity balancing. Indeed, if Defendants are no longer selling infringing products, an order restraining them from doing so would impose no hardship. Defendants' most persuasive argument—related to the perceived overbreadth of the asset freeze—is addressed below.

activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quotation marks and brackets omitted).

Defendants assert that they have provided "documentary proof, including sales records" showing that, while the court's order froze $30,142, they only made $136 in profits from selling the allegedly infringing products. (Mot. to Dissolve at 10.) Plaintiffs respond that Defendants' records are "not reliable." (Pl.s' Opp. at 9.) Because the declaration supplied by Defendants falsely claims that they stopped selling infringing products as of August 2018, Plaintiffs argue that the "purported listings records, which appear to have been created solely for this litigation, are (at best) incomplete, and fail to account for the entire period of Defendants' infringing activities." (*Id.* at 9–10.) The court agrees. Because Defendants have the burden to show that particular assets are *not* proceeds of counterfeiting, the evidence they have submitted is insufficient.

While the court again suggests that settlement discussions might be a more fruitful use of the parties' resources, it is willing to reconsider the asset freeze if Defendants supply more reliable records to Plaintiffs and the court. As Plaintiffs note, Defendants provided no indication how they "conducted [their] search, including the search parameters, or what the many 'Customer SKU' numbers referenced correspond to." (*Id.* at 10.) The court will consider a further motion to amend the asset freeze, but Defendants are urged first to meet and confer with Plaintiffs on the scope of evidence required for the court to quantify the profits derived from sales of the infringing products.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dissolve the preliminary injunction (or, in the alternative, to amend the asset freeze) [83] is denied without prejudice. The parties are directed to submit a written status report on or before January 5, 2023.

ENTER:

Dated: November 23, 2022

_____
REBECCA R. PALLMEYER
United States District Judge

8